**SO ORDERED.**

**SIGNED this 10th day of December, 2019.**



BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Rodney Wayne Etheridge, | ) | Case No. 18-11303 |
| Sandra Lynn Etheridge, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| Harry G. Gordon, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adversary No. 19-02008 |
| Rodney Wayne Etheridge, | ) | |
| Sandra Lynn Etheridge, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO AMEND;
GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT
ON THE PLEADINGS; AND GRANTING LEAVE TO FILE FURTHER
MOTION TO AMEND TO THE EXTENT SET FORTH HEREIN**

This adversary proceeding is before the Court on the Motion

to Amend/Supplement the Complaint Objecting to Discharge of

1

Debtors and Dischargeability of Debts (Sections 523 and 727) (the "Motion to Amend"), ECF No. 13, filed by Harry G. Gordon ("Plaintiff"), and the Motion to Dismiss Case (the "Motion for Judgment on the Pleadings"),[1] ECF No. 17, filed by Rodney Wayne Etheridge and Sandra Lynn Etheridge ("Defendants"). For the reasons set forth herein, the Motion to Amend will be granted in part and denied in part and the Motion for Judgment on the Pleadings will be granted in part and denied in part.

## I.   Jurisdiction and Authority

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. Under 28 U.S.C. § 157(a), the United States District Court for the Middle District of North Carolina has referred this case and this proceeding to this Court by its Local Rule 83.11. This is a statutorily core proceeding that this Court is authorized to hear and determine. See 28 U.S.C. §§ 157(b)(2)(I) and (J). The Court has constitutional authority to enter final judgments in this proceeding.[2]

---

[1] Although Defendants' motion is styled as a motion to dismiss for failure to state a claim upon which relief can be granted, Defendants appropriately move pursuant to Rule 12(c). Because Defendants filed their Answer, ECF No. 7, before filing this motion, the Court will construe this motion as a motion for judgment on the pleadings. Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405 (4th Cir. 2002).

[2] The claims in this case are constitutionally core, In re Dambowsky, 526 B.R. 590, 605 (Bankr. M.D.N.C. 2015), and the parties have consented to this Court entering final judgments on all matters raised in the pleadings. ECF No. 9.

## II.  Procedural History

Defendants filed a voluntary petition under chapter 7 of title 11 on December 5, 2018.[3]  Bk. Dkt. No. 1.  Gerald S. Schafer (the "Trustee") is the chapter 7 trustee in Defendants' bankruptcy case. The deadline for creditors to commence an action objecting to the Defendants' discharge under § 727 or an action to determine the dischargeability of any debt under § 523(c) was February 25, 2019. Bk. Dkt. No. 5.  See 11 U.S.C. § 523(c); Fed. R. Bankr. P. 4007(c); Fed. R. Bankr. P. 4004(a).  On that day, Plaintiff moved for an extension of time to file a complaint objecting to the Defendants' discharge or a complaint to determine the dischargeability of a debt, Bk. Dkt. No. 25, which the Court granted, extending the deadline for Plaintiff to file a complaint objecting to the Defendants' discharge or a complaint to determine the dischargeability of a debt until March 27, 2019.  Bk. Dkt. No. 29.

Plaintiff timely filed a Complaint on the extended deadline requesting that the Court either deny the Defendants' discharge, or alternatively determine that the debt allegedly owed by the Defendants to Plaintiff should be excepted from Defendants' discharge.  ECF No. 1.  Defendants timely filed an Answer.  ECF No. 7.

---

[3] In re Etheridge, Case No. 18-11303 (Bankr. M.D.N.C.) (docket citations designated as "Bk. Dkt.").

After Defendants filed their Answer and the deadline had passed to file a complaint objecting to discharge or to determine the dischargeability of a debt, Plaintiff filed the Motion to Amend, ECF No. 13, and the Proposed Amendment/Supplement to Complaint Objecting to Discharge of Debtors and Dischargeability of Debts (Sections 523 and 727). ECF No. 13-1. Plaintiff contemporaneously filed a Motion to Disqualify Counsel for Defendants (the "Motion to Disqualify"). ECF No. 14. Defendants filed a Response in Opposition to the Motion to Amend, ECF No. 15, a Response in Opposition to the Motion to Disqualify, ECF No. 16, and a Motion for Judgment on the Pleadings. ECF No. 17. Plaintiff subsequently filed a Memorandum in Support of the Motion to Amend and in Opposition to the Motion for Judgment on the Pleadings, ECF No. 21, and a Memorandum in Support of the Motion to Disqualify. ECF No. 22.

The Court scheduled a hearing on the Motion to Amend, the Motion to Disqualify, and the Motion for Judgment on the Pleadings for July 30, 2019. ECF No. 24. The Motion to Amend set forth various, scattershot allegations. Therefore, prior to the July 30 hearing, the Court directed Plaintiff to file a consolidated proposed amended complaint on or before August 2, 2019, and continued the hearing on the Motion to Amend and the Motion for Judgment on the Pleadings to August 19, 2019. ECF No. 27. At the hearing on July 30, 2019, the Court denied the Motion to

4

Disqualify, and thereafter entered its order effectuating that ruling.  ECF No. 33.

Plaintiff timely filed the Proposed Consolidated Amended Complaint Objecting to Discharge of Debtors and Dischargeability of Debts (Sections 523 and 727) (the "Proposed Amended Complaint"). ECF No. 32.  The Defendants then filed the Supplemental Response to the Motion to Amend.  ECF No. 35.  Following the arguments of counsel at the continued hearing, the Court took the Motion to Amend and the Motion for Judgment on the Pleadings under advisement.

### III. Factual Background

Plaintiff is Defendants' former lawyer.  The debt allegedly owed by Defendants to Plaintiff arose from Plaintiff's pre-petition representation of Defendants in state court litigation relating to a Steri-Clean Inc. ("Steri-Clean") franchise of which Defendants were franchisees.  ECF No. 1 ¶ 8.  At the time of filing, the consolidated lawsuit was pending in state court, Bk. Dkt. No. 1 at 51,[4] and Plaintiff was counsel of record for Defendants.  Bk. Dkt. No. 11 ¶ 3.

---

[4] The Trustee employed Plaintiff as special counsel under 11 U.S.C. § 327 to represent the estate in the Steri-Clean litigation.  Bk. Dkt. No. 13.  The Court subsequently approved a settlement of that litigation, Bk. Dkt. No. 43, but denied Plaintiff's application for compensation due to Plaintiff's failure to disclose the substantial outstanding fees he asserts are owed to him by the estate for his pre-petition representation of Debtors.  Bk. Dkt. No. 68.

**A.   The Complaint**

**1.   Factual Allegations in the Complaint**

The Complaint is a rambling, repetitive, sometimes incoherent, combination of allegations and briefing of putative claims. Plaintiff generally alleges that Defendants made misrepresentations to "[P]laintiff and other creditors to induce [P]laintiff and others to provide valuable services, goods, or money on credit." ECF No. 1 ¶ 10. According to Plaintiff, Defendants "grossly undervalued" assets on their bankruptcy petition, "to avoid debts in bankruptcy and protect [their] properties." Id. ¶ 11. Conversely, Plaintiff contends that Defendants overvalued their assets and understated their liabilities on their Steri-Clean franchise application. Id. ¶ 20-22.

The factual allegations supporting these general statements focus primarily on Defendants' real property.[5] Specifically, Plaintiff takes issue with Defendants' scheduled valuation of their home located in Snow Camp, North Carolina (the "Snow Camp Property"). Id. ¶¶ 20-24. In their schedules, Defendants valued

---

[5] In a summary chart, Plaintiff states that Defendants listed personal property valued at $65,000 in the June 14, 2016 Steri-Clean application, and listed personal property valued at $4,154 in the December 5, 2018 schedules. Id. ¶ 12. Plaintiff does not allege that the value in the Steri-Clean application was accurate, the values in the schedules were inaccurate, any specific personal property was identified in the application, or the Defendants owned the same personal property on the petition date as they owned two and one half years earlier.

the Snow Camp Property at $130,000, based on "Appraisal Value."
Bk. Dkt. No. 1, Schedule A/B § 1.1.  Defendants listed American
General Finance as holding a lien in the property in the amount of
$75,000, and stated that the amount of this lien is "Based on
estimate-the mortgage has not been paid for several years."  Id.,
Schedule D § 2.3.  Defendants did, in fact, have an appraisal (the
"Appraisal Report") of the Snow Camp Property, in which the
licensed appraiser opined that the value of the Snow Camp Property
is $130,000.[6]  Plaintiff alleges that the scheduled value of the
Snow Camp Property is far below both the value listed in
Defendants' Steri-Clean franchise application, ECF No. 1 ¶ 12, and
the tax value.  Id. ¶ 24.[7]

Plaintiff also alleges that Defendants "made
misrepresentations of fact to induce [P]laintiff to take their
case and to continue working on their case."  Id. ¶ 27.  According
to Plaintiff, Defendants originally requested that Plaintiff take

---

[6] Plaintiff did not attach a copy of the Appraisal Report to the Complaint or
the Proposed Amended Complaint.  However, Defendants attached a complete copy
of the Appraisal Report to the Answer.  ECF No. 7-2.  Plaintiff does not dispute
the authenticity of the Appraisal Report and, in fact, the Proposed Amended
Complaint references, purports to quote, and relies upon the Appraisal Report
attached to the Answer.  See e.g., ECF No. 32 ¶¶ 55–56.  Therefore, the Court
may consider the Appraisal Report as a document to which the Complaint
specifically refers and on which Defendant's claims rely, even when the document
is not attached to the Complaint or the Proposed Amended Complaint.  See
Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006); Simaan, Inc. v.
BP Products North America, Inc., 395 F. Supp. 2d 271, 276 n.2 (M.D.N.C. 2005).

[7] The Trustee did not object to Defendants' exemptions, request an extension of
time to object to Defendants' exemptions or to object to Defendants' discharge,
or file an objection to Defendants' discharge.  As of the date of this opinion,
the Trustee has not sought to liquidate the Snow Camp Property in order to
obtain any putative equity in the property in excess of Debtors' exemptions.

their case on a contingency basis whereby Plaintiff would receive a percentage of any recovery he obtained on behalf of Defendants. Id. ¶ 27.g.ii.   After Plaintiff refused to accept the case on a contingency basis, Defendants agreed that Plaintiff would bill Defendants on an hourly basis.   Id. ¶ 27.g.   Thereafter, Defendants "offered and agreed to do some handyman services as [the male Defendant] operated a business of handyman/Mr. Fix-it and [P]laintiff had rental properties."   Id. ¶ 27.g.iv. Plaintiff asserts that Defendants "did repair work for only the first three (3) months, with one exception, and never found time for many months to do any work or had other excuses for the remaining months of the 18-month period."   Id. ¶ 27.g.v.   Based on Defendants' sporadic performance on these handyman services, Plaintiff alleges that Defendants "never intended to pay the per-hour rates and never intended to provide services to cover any per hour rates."   Id. ¶ 27.g.iv.

By August 9, 2018, Plaintiff contends that Defendants owed his firm over $80,000 for legal fees incurred in connection with the state court litigation against Steri-Clean.   Id. ¶ 27.b. Plaintiff sent Defendants an email on August 22, 2018, in which he, among other things, reiterated Plaintiff's belief that Defendants were "candidates for bankruptcy" and suggested that Defendants execute a promissory note in favor of Plaintiff that would be secured by a deed of trust on unspecified property of

Defendants.  Id. ¶ 27.c.  The email explained that Plaintiff was
requesting a promissory note and deed of trust so that "the debt
to [Plaintiff's] firm would be secured debt and get ahead of credit
card companies and other unsecured debt." Id.  The male Defendant
responded to this request by orally stating that the bank owned
Defendants' home, which Plaintiff construed as a representation
that "either there was no equity in their home or the bank had
indeed foreclosed on the home." Id. ¶ 27.d.  In addition,
Plaintiff alleges that the male Defendant, acting on behalf of
Defendants, sent Plaintiff an email on August 24, 2018, stating,
"So here we are, as far as signing some deed to our home, that is
no longer ours." Id.  Plaintiff contends that he "reasonably
relied upon [Defendants'] untrue statements in moving forward
without security and providing substantial additional legal
services for [Defendants]." Id. ¶ 27.e.  Plaintiff also alleges
that Defendants "assured Plaintiff they would never file
bankruptcy" and "Plaintiff continued to provide substantial legal
services based on those assurances." Id. ¶ 27.h.ii.

        Finally, the Complaint alleges that Defendants' post-petition
conduct warrants a denial of discharge under § 727.  According to
Plaintiff, after he was retained by the Trustee as special counsel
to continue to pursue the Steri-Clean claims on behalf of the
estate, Defendants "repeatedly refused to cooperate with counsel
for the Trustee in producing requested documents in connection

with Trustee's counsel's efforts to recover assets for the estate." Id. ¶ 34.

### 2. Claims Asserted in the Complaint

The Complaint referred only generally to § 727, did not state on which subsection Plaintiff's putative discharge claims were based, and cited only "11 U.S.C. § 523(a)(2)(a) [sic]" in the prayer for relief requesting that his debt be excepted from discharge. Id. at 15. Construing the allegations in a light most favorable to Plaintiff, in his original Complaint, he attempts to assert claims under §§ 523(a)(2)(A), 727(a)(4)(A), and 727(a)(4)(D).

Plaintiff's claim under § 523(a)(2)(A) is based on alleged misrepresentations made by Defendants to Plaintiff and other creditors "to induce [P]laintiff and others to provide valuable services, goods, or money on credit." Id. ¶ 10. First, Plaintiff alleges that Defendants misrepresented their assets and liabilities in their Steri-Clean franchise application, though Plaintiff does not allege that Defendants provided the Steri-Clean franchise application to him prior to the mediation in the bankruptcy case or that he relied on the figures in the Steri-

10

Clean franchise application in any way.[8]  Id. ¶¶ 20-22.[9]  Second, Plaintiff alleges that Defendants misrepresented their assets, income, and intended use of borrowed funds in certain credit card applications.  Id. ¶ 25.  Again, Plaintiff does not allege that he, or anyone else other than the unidentified credit card companies, relied on the alleged misrepresentations in Defendants' credit card applications or suffered any damages as a result.[10]  Finally, Plaintiff alleges that Defendants "made misrepresentations of fact to induce [P]laintiff to take their case and to continue working on their case."  Id. ¶ 27.  Specifically, Plaintiff alleges that Defendants told Plaintiff that they intended to pay Plaintiff for legal services, that they no longer owned their home (or that there was no equity in the home), and that they did not intend to file for bankruptcy.  Id. ¶¶ 26-27.

---

[8] See infra notes 25 and 26 and accompanying text.  Steri-Clean has not filed a complaint objecting to Defendants' discharge or the dischargeability of any debt, and released all claims against Defendants and the estate pursuant to the mediated settlement agreement approved by the Court on May 2, 2019.  Bk. Dkt. No. 43.

[9] Plaintiff merely alleges that the valuations and property in the Steri-Clean franchise application differ from those in the schedules.  Plaintiff does not allege that the values in the Steri-Clean franchise application are accurate, nor does he allege any facts tending to show what he contends is the value of the Snow Camp Property.

[10] No credit card company has filed a complaint objecting to Defendants' discharge or the dischargeability of any debt.  Moreover, the time for commencing such an action expired on February 25, 2019.  Bk. Dkt. No. 5.

Any putative claim in the Complaint under § 727(a)(4)(A) is based on alleged misrepresentations made by Defendants in connection with their bankruptcy case. Plaintiff asserts that Defendants made a false oath or account by misrepresenting certain assets and liabilities in their bankruptcy schedules. Id. ¶ 24.

Any claim under § 727(a)(4)(D) is presumably based on[11] Defendants' alleged failure to "cooperate with counsel for the Trustee in producing requested documents in connection with Trustee's counsel's efforts to recover assets for the estate." Id. ¶ 34.

B.   **The Proposed Amended Complaint**

1.   **Factual Allegations in the Proposed Amended Complaint**

The Proposed Amended Complaint is another example of pleading that contains rambling, argumentative, irrelevant, and repetitive allegations and legal briefing.[12] After 23 paragraphs spanning over five pages, including the verbatim and irrelevant recitation of an affidavit filed by the Trustee in the underlying bankruptcy case in support of the Application to Compensate Special Counsel

---

[11] In construing the Complaint in a light most favorable to Plaintiff, the Court has had to make this presumption because the Complaint does not cite to any specific subsection of § 727 on which Plaintiff relies.

[12] For example, Paragraphs 67 through 78 of the Proposed Amended Complaint contain general statements of bankruptcy law, citations to cases without reference to a single fact, and repetitive allegations. In addition, the Proposed Amended Complaint quotes verbatim §§ 727(a)(2)(A) and (B) and 727(a)(4)(A), (C), and (D). ECF No. 32 ¶ 65. Similarly, Plaintiff quotes verbatim § 523(a)(2)(A) and (B). Id. ¶ 80.

for Trustee, Bk. Dkt. No. 45, the Proposed Amended Complaint reaches the "Operative Facts." ECF No. 32 at 6. Plaintiff alleges that he has discovered "new facts" relevant to his claims. ECF No. 21 at 3. The "new facts" relate to:

> 1) the use of a "lot appraisal" to justify a low value/no value for a house owned by [Defendants]; 2) the actual failure to include in [Defendants'] Petition the 4-bedroom, 4-bath 2,700-square foot house owned by the [Defendants]; 3) the apparent non-existence of an alleged $75,000 mortgage on [Defendants'] claimed residence; 4) the actual residence of the [Defendants] was other than the Snow Camp property, but the "zero-value" Snow Camp home was still claimed for purposes of the $70,000 in homestead exemptions; and 5) the timing of a pre-bankruptcy appraisal being done at the same time that [the male Defendant] assured plaintiff he would not file bankruptcy and in writing stated to plaintiff, a creditor, that he could not provide security in his home as he no longer owned it.

ECF No. 21 at 3. Plaintiff seeks to amend the Complaint to incorporate these allegations. ECF No. 13 at 3.

### 2. Claims Asserted in the Proposed Amended Complaint

In addition to the "new facts," Plaintiff seeks to amend the Complaint to specify and supplement the subsections of §§ 727 and 523 on which he relies and to augment his prayer for relief. ECF No. 32 at 31–32. The prayer for relief in the Proposed Amended Complaint requests that the Court: (1) order the Trustee (a non-party to the adversary proceeding) to undertake the obligations imposed on him by the Bankruptcy Code, including investigating Defendants' assets; (2) order someone (presumably the Trustee) to conduct an audit of Defendants' assets and liabilities to

13

"determine true values and obligations;" (3) "decree" that the
Defendants may not claim their residence as exempt; (4) "find"
that the Defendants are not "honest but unfortunate;" (5) "find"
that the bankruptcy filing was in bad faith and deny discharge
under § 727;[13] (6) deny Defendants' discharge under §§ 727(a)(2)(A)
and (B), and 727(a)(4)(A), (C), and (D); (7) determine that the
obligation allegedly owed by Defendants to Plaintiff is
nondischargeable under §§ 523(a)(2)(A) and (B); and (8) award
judgment against Defendants for $90,910.31, along with costs.  Id.

## IV.  Discussion

Unless a party seeks to amend its pleading as a matter of
course, "a party may amend its pleading only with the opposing
party's written consent or the court's leave."[14]  Fed. R. Civ. P.
15(a)(2).  Because Defendants oppose the amendment, Plaintiff only

---

[13] See In re Causey, 519 B.R. 144, 154 (Bankr. M.D.N.C. 2014) ("[T]he general
doctrine of unclean hands is not a proper basis upon which a court may except
a debt from discharge, or bar or revoke a debtor's discharge.  The Supreme Court
has made clear that exceptions to discharge are limited to those plainly
expressed." (citing Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998); Gleason v.
Thaw, 236 U.S. 558, 562 (1915))).

[14] Rule 15 (a)(1) provides:

> (1) Amending as a Matter of Course. A party may amend its pleading
> once as a matter of course within:
>
>> (A) 21 days after serving it, or
>>
>> (B) if the pleading is one to which a responsive pleading is
>> required, 21 days after service of a responsive pleading or
>> 21 days after service of a motion under Rule 12(b), (e), or
>> (f), whichever is earlier.

Defendants filed an Answer to the Complaint on April 25, 2019.  ECF No.
7.  Therefore, the deadline for Plaintiff to amend his Complaint as a
matter of course had expired when Plaintiff filed the Motion to Amend on
June 13, 2019.

14

may amend his Complaint with the Court's leave. Under Rule 15(a)(2), "[t]he court should freely give leave when justice so requires." The Supreme Court has instructed:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

Foman v. Davis, 371 U.S. 178, 182 (1962).

In contrast to the presumption in favor of liberally allowing amendments, objections to discharge and determinations of dischargeability are strictly construed in favor of discharge. Robinson v. Worley, 849 F.3d 577, 583 (4th Cir. 2017) ("Given the harsh consequences of a denial of discharge, [§727] is ordinarily construed liberally in the debtor's favor." (citing Smith v. Jordan (In re Jordan), 521 F.3d 430, 433 (4th Cir. 2008))); In re Rountree, 478 F.3d 215, 219 (4th Cir. 2007) ("When considering the applicability of an exception to discharge, we construe the exception narrowly 'to protect the purpose of providing debtors a fresh start.'" (quoting Foley & Lardner v. Biondo (In re Biondo), 180 F.3d 126, 130 (4th Cir.1999))).

In this case, the deadline for Plaintiff to file a complaint objecting to the Defendants' discharge or a complaint to determine the dischargeability of a debt expired on March 27, 2019, and Plaintiff did not move to amend the Complaint until June 13, 2019.

15

ECF No. 13. Therefore, unless Plaintiff's amendment relates back to the date of the filing of the Complaint, any amendment will be time-barred by Bankruptcy Rules 4004 and 4007 and thus futile. In re Riggert, 399 B.R. 453, 462 (Bankr. N.D. Tex. 2009). Under Rule 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Therefore, "if the original pleading adequately identifies the factual circumstances out of which the amended claim arises, the amendment will relate back." In re DeBerry, No. 09-12428, 2012 WL 1463598, at *7 (Bankr. M.D.N.C. Apr. 27, 2012) (citations omitted). In contrast, if the proposed amendments are not part of the same core of operative facts alleged in the timely filed dischargeability complaint, the proposed amendments will not relate back and are untimely. See e.g., In re Oien, 404 B.R. 311, 317 (Bankr. N.D. Ill. 2009) (holding that a plaintiff could not add civil conspiracy and unjust enrichment claims as a basis for non-dischargeability or objection to discharge because the facts supporting those claims were not the same operative facts supporting the timely asserted claims).

Even if a proposed amendment relates back to the date of the original filing, the amendment still may be futile. In re Howe, 446 B.R. 153, 156 (Bankr. E.D. Pa. 2009) ("An amendment is futile

if it would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."). Therefore, before the Court may grant the Motion to Amend, the Court must determine whether the proposed amendments, even if allowed, would survive a motion to dismiss for failure to state a claim upon which relief may be granted. Id. Because "[a] motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)," Occupy Columbia v. Haley, 738 F.3d 107, 115 (4th Cir. 2013), the Court will consolidate its analysis of Plaintiff's claims and proposed claims for purposes of the Motion to Amend and the Motion for Judgment on the Pleadings.

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although a plaintiff need only plead a short and plain statement of the claim establishing that he or she is entitled to relief, Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Thus, each claim and proposed claim asserted by Plaintiff will survive a motion to dismiss only if the Complaint or the Proposed Amended Complaint contain "sufficient factual matter, accepted as true, to

17

'state a claim for relief that is plausible on its face.'" <u>Iqbal</u>,
556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).  The Supreme
Court has set forth the following plausibility standard:

> A claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to draw the
> reasonable inference that the defendant is liable for
> the misconduct alleged. The plausibility standard is not
> akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted
> unlawfully. Where a complaint pleads facts that are
> "merely consistent with" a defendant's liability, it
> "stops short of the line between possibility and
> plausibility of 'entitlement to relief.'"

<u>Id.</u> (citations omitted).  To determine plausibility, all facts set
forth in the Complaint and the Proposed Amended Complaint are taken
as true.  However, "legal conclusions, elements of a cause of
action, and bare assertions devoid of further factual enhancement"
will not constitute well-pled facts necessary to withstand a motion
to dismiss.  <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.</u>,
591 F.3d 250, 255 (4th Cir. 2009).  "Determining whether a
complaint states a plausible claim for relief will . . . be a
context-specific task that requires the reviewing court to draw on
its judicial experience and common sense."  <u>Iqbal</u>, 556 U.S. at
679.

In analyzing the claims and proposed claims asserted in the
Complaint and the Proposed Amended Complaint, the Court is not
required to "accept as true allegations that contradict matters
properly subject to judicial notice or by exhibit."  <u>Veney v.</u>

18

Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)); see also S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 182 (4th Cir. 2013) ("In the event of conflict between the bare allegations of the complaint and any exhibit attached to the complaint, the exhibit prevails.") (internal quotation marks, alterations, and ellipsis omitted); GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1385 (10th Cir. 1997) ("[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true.").

Under Fed. R. Evid. 201(b)(2), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  The Fourth Circuit has "note[d] that '[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.'" Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) (citing 21 C. Wright & K. Graham, Federal Practice and Procedure; Evidence § 5106 at 505 (1977)).

## A.   Plaintiff's Objection to Defendants' Claimed Property Exemptions

In the Proposed Amended Complaint, Plaintiff alleges for the first time that "Defendants improperly claimed exemptions and

sheltered the entire Snow Camp Property from claims of creditors."
ECF No. 32 ¶ 24.f.   In addition to the allegations regarding
Defendants' valuation of the Snow Camp Property, which are
addressed below, Plaintiff alleges that "Defendants do not and did
not on the bankruptcy filing date reside at the Snow Camp Property
they showed in their [p]etition as their residence on the December
5, 2018 [p]etition filing date."  Id. ¶ 24.e.  Plaintiff alleges
that Defendants actually reside at 528 W. Elm Street, Graham, North
Carolina (the "Graham Property").  Id.  Plaintiff further alleges
that Defendants' landlord informed him that Defendants have lived
at the Graham Property for one and a half years.  Id.  Plaintiff
asserts that Defendants made a false oath by claiming a homestead
exemption in the Snow Camp Property, pursuant to N.C. Gen. Stat.
§ 1C-1601(a)(1), because "Defendants in fact lived elsewhere on
the December 4, 2018 filing date."[15]  Id. ¶ 46.

Plaintiff requests that the Court "decree that . . .
Defendants' [sic] may not value the house/residential structure at
zero and then claim it for $70,000 in homestead exemptions."  Id.
at 32.  Construing the proposed amendment in a light most favorable
to Plaintiff, he either is attempting to amend the Complaint to
assert an untimely objection to Defendants' claimed property
exemptions, or alternatively, objecting to Defendants' discharge

---

[15] Defendants filed their petition for relief on December 5, 2018.  Bk. Dkt. No.
1.

under § 727(a)(4)(A) based on an alleged misrepresentation in their schedules that Defendants resided at the Snow Camp Property.[16]  Defendants argue that the time for objecting to their claimed property exemptions has expired under Fed. R. Bankr. P. 4003, and Defendants assert that "Plaintiff may not resurrect a stale exemption objection merely by clothing it as a 11 U.S.C. [§] 727 claim."  ECF No. 15 at 2.

To the extent Plaintiff seeks to amend the Complaint to include an objection to Defendants' claimed property exemptions as indicated in his prayer for relief, the Court will deny the Motion to Amend because such an objection is untimely and the amendment therefore would be futile.  Subject to certain exceptions not relevant here, Fed. R. Bankr. P. 4003(b)(1) provides that "a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later."  Upon a request from a party in interest, the Court may extend the deadline under Fed. R. Bankr. P. 4003(b)(1); however, such a request must be made "before the time to object expires."

---

[16] To the extent the Court construes the allegations in the Proposed Amended Complaint regarding Defendants' claimed property exemptions to assert a claim under § 727(a)(4)(A), the Court will address that proposed claim below.  See infra Section IV.C.1.c.

Defendants filed their claim for property exemptions on December 5, 2018. Bk. Dkt. No. 1 at 18. The meeting of the creditors under § 341 was held on January 7, 2019. Defendants have not amended their claim for property exemptions, and no party in interest timely requested an extension of the deadline to file objections to Defendants' claimed property exemptions. Accordingly, the deadline for filing an objection to Defendants' claimed property exemptions was February 6, 2019. Plaintiff filed the Proposed Amended Complaint on August 2, 2019. ECF No. 32. Therefore, Plaintiff's objection to Defendants' claimed property exemptions is untimely.[17] Because it would be futile to allow Plaintiff to amend the Complaint to include such an untimely objection, the Court will deny the Motion to Amend to the extent Plaintiff seeks to amend the Complaint to include an objection to Defendants' claimed property exemptions.

## B.   Section 727(a)(2)(A) and (B)

Although the original Complaint generally objects to Defendants' discharge under § 727, it does not specifically assert a claim under § 727(a)(2)(A) or (B), or any other specific subsection. In the Proposed Amended Complaint, although Plaintiff does not propose to set out separate claims for relief under

---

[17] Even if the original Complaint had included an objection to Defendants' claimed property exemptions, such an objection still would have been untimely. Plaintiff filed the Complaint on March 27, 2019, nearly two months after the deadline for filing an objection to Defendants' claimed property exemptions.

specific subsections, he quotes a number of subsections under a general claim for relief objecting to discharge. The Court will address these in the order they appear in the Proposed Amended Complaint, beginning with § 727(a)(2). ECF No. 32 at 32. Section 727(a)(2) provides:

> The court shall grant the debtor a discharge, unless--
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>
>> (A) property of the debtor, within one year before the date of the filing of the petition; or
>> (B) property of the estate, after the date of the filing of the petition

Plaintiff must establish four elements for a prima facie case under § 727(a)(2): "(1) The transfer, removal, destruction, or concealment of property, (2) belonging to the debtor or estate, (3) within a year of filing the petition or after the filing of the petition, depending on the subsection, and (4) with the intent to hinder, delay, or defraud." In re Young, 578 B.R. 312, 318 (Bankr. M.D.N.C. 2017) (footnote omitted).

Construing the allegations in the light most favorable to Plaintiff, Plaintiff alleges that Defendants' valuation of the Snow Camp Property effectively concealed their residence on the Snow Camp Property. ECF No. 32 ¶ 66.a. According to Plaintiff, Defendants concealed their residence on the Snow Camp Property by

23

using "a lot appraisal misleadingly labeled a 'Residence' appraisal . . . [which] valued only the dirt and a well and gave zero value to the house occupied by [D]efendants as a residence for some ten (10) years or more." Id.

A cursory review of Defendants' Schedule A/B and exemptions reveals that Defendants disclosed their residence. Defendants' Schedule A/B provides that the Snow Camp Property is a single-family home valued at $130,000.00, and Defendants expressly claimed the property exempt as their residence. Any allegations asserting that Defendants failed to disclose the residence are plainly contradicted by the record.[18]  Because Plaintiff's allegation that Defendants concealed their home on the Snow Camp Property is plainly contradicted by "matters properly subject to judicial notice," the Court is not required to accept the allegation as true. Veney, 293 F.3d at 730 (quoting Sprewell, 266 F.3d at 988). Therefore, if the Court were to grant the Motion to Amend with respect to Plaintiff's proposed claims under § 727(a)(2)(A) and (B), those claims would not survive a motion to dismiss, and the amendment would be futile. Howe, 446 B.R. at

---

[18] Although a court may take judicial notice of the content of records, it may not take judicial notice of the truth of a fact contained in the record.  The Court is not relying on the record to find that the Snow Camp Property was, in fact, Defendants' residence. See In re NC & VA Warranty Co., Inc., 554 B.R. 110, 121 (Bankr. M.D.N.C. 2016).  Instead, the Court merely is taking notice of the fact of the content of the record, and need not accept an allegation that Defendants failed to disclose the residence when the schedules plainly claim it as such.

156.   Accordingly, the Court will deny the Motion to Amend with respect to Plaintiff's proposed claims under § 727(a)(2)(A) and (B), and grant Defendants' Motion for Judgment on the Pleadings to the extent that the original Complaint attempted to assert such a claim.

## C.   Section 727(a)(4)

Section 727(a)(4) provides:

The court shall grant the debtor a discharge, unless--
(4) the debtor knowingly and fraudulently, in or in connection with the case--

(A) made a false oath or account;
(B) presented or used a false claim;
(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs[.]

"[B]ecause one element of a § 727(a)(4) claim is fraudulent intent, [a] [p]laintiff's complaint must meet the particularity requirements of Rule 9(b)." In re Steffensen, 511 B.R. 149, 160 (Bankr. D. Utah 2014). "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." McCauley v. Home Loan Inv. Bank, F.S.B., 710 F.3d 551, 559 (4th Cir. 2013) (internal quotation marks and citations

25

omitted); see also Sullivan v. Leor Energy, LLC, 600 F.3d 542, 551
(5th Cir. 2010) ("To plead fraud adequately, the plaintiff must
specify the statements contended to be fraudulent, identify the
speaker, state when and where the statements were made, and explain
why the statements were fraudulent.") (internal quotation marks
and citation omitted).

As discussed above, the original Complaint, construed in the
light most favorable to Plaintiff, attempts to assert claims under
§ 727(a)(4)(A) and (D).[19]  The Proposed Amended Complaint attempts
to bolster the assertion that Defendants made a false oath or
account in connection with the case by asserting that Defendants
misrepresented their assets and liabilities their schedules as
contemplated by § 727(a)(4)(A).  Plaintiff similarly seeks to amend
the Complaint to include additional allegations which might
support a claim for failure to provide the Trustee with requested
documents as required by § 727(a)(4)(D).  Finally, Plaintiff seeks
to amend the Complaint to assert a claim under § 727(a)(4)(C) for
extortion or bribery.  The Court will address these claims
seriatim.

---

[19] The original Complaint not only fails to specifically identify the subsections
under § 727 on which Plaintiff relies, but also contains no separately stated
claims for relief.

26

### 1.  Section 727(a)(4)(A)

"To run afoul of [Section 727(a)(4)(A)], 'the debtor must have made a statement under oath which he knew to be false, . . . he must have made the statement willfully, with intent to defraud,' and the statement 'must have related to a material matter.'" Robinson v. Worley, 849 F.3d 577, 583 (4th Cir. 2017) (quoting Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249, 251 (4th Cir. 1987)).  Therefore, for purposes of a motion to dismiss, Plaintiff must assert facts, which if proven, would establish "that: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement materially related to the bankruptcy case."  In re Stout, 348 B.R. 61, 64 (Bankr. N.D.W. Va. 2006) (citing Williamson, 828 F.2d at 251–52).

In the original Complaint, Plaintiff alleges that Defendants made a false oath by misrepresenting the values of certain assets and liabilities in their petition.  Specifically, Plaintiff alleges:

> If [Defendants'] [h]ome is indeed worth $250,000 and they have no mortgage balance, as they represented to creditors in writing, including in the Steri-Clean Franchise Application, then [Defendants'] representations to the Bankruptcy Court in their bankruptcy petition constitute misrepresentations to the Bankruptcy Court as they represented their [h]ome to have a value of only $130,000 and having a mortgage balance of $75,000.

27

ECF No. 1 ¶ 24.  According to Plaintiff, "[Defendants] either misrepresented their equity, misrepresented values, loan balances, and equity [sic] in written statements to creditors or misrepresented the [h]ome value, loan balances, and equity in bankruptcy court."  Id. ¶ 22.  Defendants averred in their schedules that their valuation is based upon the Appraisal Report. The Appraisal Report indicates that the appraiser determined that "[t]here were too many variables to factor with the house and the lack of permits or at least a list of the potential costs to bring the subject up to the minimum guidelines from Alamance County Inspections Department."  ECF No. 7-2 at 6.  Thus, according to his report, the appraiser—after consulting with the North Carolina Appraisal Board—determined that "the market value would be best represented by an appraisal of the land and the well."  Id.

Although Plaintiff alleges that there are discrepancies between the values listed in Defendants' Steri-Clean franchise application and the values listed in Defendants' bankruptcy schedules, the Complaint does not allege whether the values listed in in the Steri-Clean application were accurate at the time of the application or at the time of the filing of the bankruptcy petition.  Allegations that the values in the Steri-Clean application differ from those in the schedules, might be consistent with potential liability, but, even if accepted as true, do not push the allegations across the line to plausibility.  Plaintiff

28

asks the Court to speculate that the schedules are inaccurate because they differ from the Steri-Clean application. These conclusory and speculative allegations in the original Complaint do not state a plausible claim under § 727(a)(4)(A). See <u>Iqbal</u> 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"); <u>see also</u> <u>Merritt v. Countrywide Fin'l Corp.</u>, Case No. 09-17678, 583 Fed.Appx. 662, 664-65 (9th Cir. July 16, 2014) (disregarding hypothetical or conditional allegations and granting a motion to dismiss because the court need not accept as true hypothetical allegations or conjecture; further finding that, where a plaintiff's allegations are hypothetical, "the court cannot know which facts to accept as true for purposes of evaluating the motion to dismiss").  Similarly, the fact that the scheduled value of the Snow Camp Property differs from the tax value, even if accepted as true, does not establish that the statements in the schedules were false or fraudulent.  At the heart of Plaintiff's allegations is that he simply disagrees with the method Defendants used to value the Snow Camp Property, and a valuation dispute under the circumstances of this case does not

rise to the level of a false oath as contemplated by §
727(a)(4)(A).

Plaintiff, through the Proposed Amended Complaint, now seeks
to amend the Complaint to include additional allegations that
relate to his putative § 727(a)(4)(A) claim.  First, Plaintiff
alleges that Defendants made a false oath or account by including
a $75,000 mortgage in favor of American General Financial Services
in Schedule D.  ECF No. 32 ¶ 24.d.  Second, Plaintiff now alleges
that Defendants, by relying on a "lot appraisal" instead of a
"residence appraisal," made a false oath when they valued the Snow
Camp Property at $130,000 in Schedule A/B.  Id. ¶ 24.a.  Finally,
construing the allegations in the light most favorable to
Plaintiff, Plaintiff alleges that Defendants made a false oath in
their claim for property exemptions by claiming a homestead
exemption, pursuant to N.C. Gen. Stat. § 1C-1601(a)(1), in the
Snow Camp Property when they in fact did not live there.  Id.
¶ 24.e.

### a. Allegations Regarding Mortgage in Favor of American General Financial Services

Plaintiff alleges that Defendants' listing of the mortgage in
Schedule D constitutes a false oath because Defendants' Steri-
Clean franchise application from 2016 stated that Defendants did
not have an outstanding mortgage.  Id. ¶ 44.  Plaintiff attached
"a true and correct copy of the American General Financial Services

Deed of Trust," id., as Exhibit B to the Proposed Amended Complaint. ECF No. 32-2. Plaintiff again speculates that the mortgage, which was recorded in 2007, could not have a balance of $75,000 because the mortgage secured a "maximum credit line of $50,000, which credit line loan only allowed draws for five (5) years." ECF No. 32 ¶ 44. In addition, Plaintiff alleges that he called American General Financial Services and a manager of the Fayetteville office told Plaintiff that "company records revealed no records of any debt owed to the Company by the [Defendants]." Id. ¶ 59.

Plaintiff's allegation that Defendants made a false oath or account by listing a $75,000 mortgage in favor of American General Financial Services in Schedule D is at odds with Plaintiff's exhibits. Exhibit B to the Proposed Amended Complaint reflects an outstanding deed of trust on the Snow Camp Property that has not been satisfied on the public record. ECF No. 32-2. Thus, the record contradicts Plaintiff's speculative allegation that Defendants made a false oath or account by listing the outstanding mortgage in favor of American General Financial Services in Schedule D. Moreover, Defendants, in Schedule D, disclose that the outstanding amount of the mortgage is estimated because "the mortgage has not been paid for several years . . . . [and] Debtors have not received account statements." Bk. Dkt. No. 1 at 28. This disclosure is clear, and no facts alleged in the Complaint or the

Proposed Amended Complaint plausibly establish that the statement is false, that the Defendants knew it was false, or that Defendants made it with the intent to defraud.  Furthermore, the information in the schedules sufficiently and adequately disclosed the bases for the statements in the schedules, and gave all parties in interest, including the Trustee who is required to perform his duties under § 704(a)(1), (4), and (6), sufficient information to investigate Defendants' assets and obligations as intended. Having had that opportunity, the Trustee has not attempted to liquidate the property, objected to Defendants' claimed exemptions, or objected to Defendants' discharge.

Because Plaintiff's allegation that Defendants made a false oath or account by listing a $75,000 mortgage in favor of American General Financial Services in Schedule D is contradicted by the record in this case, the Court is not required to accept the conclusory and speculative allegation that the Defendants' statement is false.  Veney, 293 F.3d at 730.  As such, Plaintiff's allegations regarding the mortgage in favor of American General Financial Services are insufficient to sustain a claim under § 727(a)(4)(A), and the proposed amendment would be futile. Accordingly, the Court will deny the Motion to Amend to the extent Plaintiff seeks to amend the Complaint to include a claim under § 727(a)(4)(A) based on the allegations regarding the mortgage in favor of American General Financial Services.

b. **Amended    Allegations    Regarding    Defendants'**
**Valuation of the Snow Camp Property**

The Proposed Amended Complaint argumentatively alleges in a
conclusory statement that "the actual fair market value of the
[Snow Camp Property] is much greater than the $130,000 'lot
value.'" ECF No. 32 ¶ 24.c. According to Plaintiff, Defendants
misrepresented the value of the Snow Camp Property by relying on
a "lot appraisal," not a "residence appraisal." Id. ¶ 24.a.
Plaintiff claims:

> The Defendant-paid-for-appraisal purports to be and is
> titled as "APPRAISAL REPORT of Single Family Residence
> at 876 Clark Rd, Snow Camp, NC 27649" . . . . But, it is
> actually an appraisal of only the lot and well. While
> using a cover sheet purporting to be an appraisal of a
> single-family residence, it is actually a "Land
> Appraisal Report" an appraisal of a vacant lot with well
> as it gives zero value at all to the 2,712 square foot
> 4-bedroom, 4-bath home on the premises. (Tax Appraisal
> figures.)[.]

Id. ¶ 56 (emphasis in original). Because "[t]he 'residence'
appraisal did not value or make any attempt to value the 4-bedroom,
4-bath, 2,712 square foot home . . . and instead used a 'zero'
value," Plaintiff alleges that Defendants made a false oath when
they valued the Snow Camp Property at $130,000 in Schedule A/B.
Id. ¶ 24.a. These allegations characterizing the content of the
Appraisal Report are contradicted by the actual contents of the
Appraisal Report, and the Court is not required to accept
Plaintiff's characterizations as true. The Appraisal Report
indicates that the appraiser determined that "[t]here were too

33

many variables to factor with the house and the lack of permits or at least a list of the potential costs to bring the subject up to the minimum guidelines from Alamance County Inspections Department." ECF No. 7-2 at 6. Thus, the appraiser——after consulting with the North Carolina Appraisal Board——determined that "the market value would be best represented by an appraisal of the land and the well." Id. Moreover, the assumptions underlying the appraiser's valuation were disclosed in the Appraisal Report. The Court need not determine if the appraiser's conclusions are accurate or if his assumptions and methodology were sound, only that the contents of the report contradict Plaintiff's allegations characterizing that content. Plaintiff also seems to imply that Defendants or the appraiser sought to conceal the true nature of the Appraisal Report by including certain important details in the "small print" on the Appraisal Report. Id. ¶ 25; ECF No. 32-5. This allegation is irrelevant and without merit in any event.[20]

Although Plaintiff is certainly entitled to disagree with Defendants' valuation of the Snow Camp Property, a mere valuation dispute is insufficient to constitute a false oath and the allegations in the Proposed Amended Complaint are insufficient to

---

[20] The assumptions underlying the appraiser's valuation were not hidden in the "small print" of the Appraisal Report. The size of the text appears to be consistent throughout the Appraisal Report. See ECF No. 7-2.

bar Defendants' discharge under § 727(a)(4)(A). Therefore, the issue is not whether Plaintiff agrees with the appraiser, but whether Defendants sufficiently disclosed the property and the basis of the valuation, which they did, and whether that basis reflects such a reckless disregard for the truth that it gives rise to a reasonably plausible inference of fraudulent intent, which it does not.[21]   As a result, Plaintiff's allegations are

---

[21] Even construed in a light most favorable to the Plaintiff, the facts in this case do not rise to the level where a valuation is so wholly inadequate to plausibly create an inference of fraud. Inaccurate valuations must be fully unmoored from the facts to create such an inference. For example, in Robinson v. Worley (In re Worley), 517 B.R. 593 (Bankr. M.D.N.C. 2014); aff'd 540 B.R. 568 (M.D.N.C. 2015); aff'd 849 F.3d 577 (4th Cir. 2017), this Court denied debtor's discharge for fraudulently understating the value of his interest in a limited liability company, Gemini Land Trust, LLC ("Gemini"). The debtor claimed the value of his 49% interest in Gemini for which he paid $65,000 was worth only $2,500. The facts in Worley are inapposite and egregious. Gemini owned 10% of another limited liability company, Pelham Land Group, LLC ("Pelham"), which held real property consisting of 587 acres of timberland. Pelham's books valued Gemini's 10% interest at $164,484, and the debtor received multiple annual K1 filings from 2008 to 2012 valuing his interest in Gemini between $68,985 and $67,555. Despite this information, the debtor in Worley listed the value at $2,500, purportedly basing this valuation on a multiple of the minimal distributions that had been made to Gemini's members under a capitalization rate method of valuation that he determined himself, rather than having any correlation to the value of the interest or the underlying property, or, unlike in this case, requesting an appraisal of the interest or the property. Moreover, after the petition date, Pelham sold a portion of the timber and distributed $100,000 to Gemini, resulting in the debtor being entitled to receive $50,000. In affirming this Court, the Fourth Circuit observed that these facts gave rise to an inference of fraud because the valuation and method employed by the debtor had no basis and demonstrated a reckless indifference to the truth. 849 F.3d at 585. In this case, Defendants purchased the Snow Camp Property for $65,000, and obtained two future advance deeds of trust against the property in the respective amounts of approximately $38,000 and $73,000. ECF No. 32 ¶ 43. The male Defendant was an unlicensed handyman, who had made significant modifications to the home without building permits in an attempt to take it "off the grid." Id. ¶¶ 33, 60.l. Even construed in a light most favorable to Plaintiff, the facts alleged in this case simply do not rise to a level akin to Worley that are necessary to create an inference of fraud in Defendants' valuation, and do not give rise to a reasonably plausible inference of fraudulent intent with respect to the valuation of the Snow Camp Property on the Defendants' schedules.

insufficient to sustain a claim under § 727(a)(4)(A), and the proposed claim under § 727(a)(4)(A) would not survive a motion to dismiss. As with the putative claims under § 727(a)(2)(A) and (B) and the allegations regarding the mortgage in favor of American General Financial Services, it would be futile to allow Plaintiff to amend the Complaint to include a § 727(a)(4)(A) claim based on these allegations. <u>Howe</u>, 446 B.R. at 156. Accordingly, the Court will deny the Motion to Amend to the extent Plaintiff seeks to amend the Complaint to include a claim under § 727(a)(4)(A) based on Plaintiff's allegations regarding Defendants' valuation of the Snow Camp Property.

   **c. Allegations Regarding Defendants' Claimed Property Exemptions**

  Plaintiff attempts to bootstrap his untimely objection to Defendants' exemptions by asserting that Defendants' attempt to exempt the Snow Camp Property as their residence itself constitutes a false oath under § 727(a)(4)(A) because they have not lived there for some time. Even if such a collateral and untimely attack on exemptions could form the basis for a claim under § 727(a)(4)(A), this proposed amendment similarly is untimely and therefore futile. The deadline for Plaintiff to file a complaint objecting to the Defendants' discharge expired on March 27, 2019. Plaintiff did not move to amend the Complaint until June 13, 2019. ECF No. 13. Therefore, Plaintiff's amendment will be time-barred by Fed.

R. Bankr. P. 4004 unless the amendment relates back to the date of the filing of the Complaint.  See Fed. R. Bankr. P. 4004; Riggert, 399 B.R. at 462.

The original Complaint, construed in the light most favorable to Plaintiff, attempts to assert a claim under § 727(a)(4)(A) based on discrepancies between certain values listed in Defendants' Steri-Clean franchise application (including the Snow Camp Property) and certain values listed in Defendants' bankruptcy schedules.  ECF No. 1 ¶ 24.  The original Complaint does not allege that Defendants resided anywhere other than at the Snow Camp Property, or that Defendants made a false oath by claiming a homestead exemption in the Snow Camp Property.  Accordingly, the allegation that Defendants made a false oath by claiming a homestead exemption in the Snow Camp Property, pursuant to N.C. Gen. Stat. § 1C-1601(a)(1), does not arise out of the same operative facts as those set forth in the original Complaint, and the allegation will not relate back to the date of the filing of the Complaint.  DeBerry, 2012 WL 1463598, at *7 ("An amended complaint that 'sets forth a separate set of operative facts' does not relate back under Rule 15(c)." (quoting In re Khafaga, 431 B.R. 329, 334 (Bankr. E.D.N.Y.2010))).[22]

---

[22] The alleged facts do not state a claim even if he had raised this issue in the original Complaint.  The mere fact that Defendants did not live at the property on the petition date, even if accepted as true, is insufficient to demonstrate that they could not claim it as a residence, much less that such an assertion was fraudulent.  See In re McClamrock, Case No. 03-13643C-7G, 2004 WL

Because the allegation that Defendants made a false oath by claiming a homestead exemption in the Snow Camp Property will not relate back to the filing of the Complaint, it would be futile to allow Plaintiff to amend the Complaint to include a claim under § 727(a)(4)(A) based on this allegation. Therefore, the Court will deny the Motion to Amend to the extent Plaintiff seeks to amend the Complaint to include a claim under § 727(a)(4)(A) based on Plaintiff's allegation that Defendants' made a false oath by claiming a homestead exemption in the Snow Camp Property.

For these reasons, the allegations in the Complaint do not state a claim under § 727(a)(4)(A). Moreover, because the Proposed Amended Complaint does not remedy the infirmities of the Complaint's § 727(a)(4)(A) claim or otherwise state a claim under § 727(a)(4)(A), the Motion for Judgment on the Pleadings will be granted with respect to Plaintiff's claim under § 727(a)(4)(A), and the Motion to Amend will be denied with respect to the Plaintiff's proposed claims under § 727(a)(4)(A).

---

229521, *2 (Bankr. M.D.N.C. Feb. 5, 2004) ("The fact that the Debtor did not have a physical presence at the Property when this case was filed does not, standing alone, preclude the Property from qualifying as her residence. Absence from the home that is involuntary and temporary does not constitute relinquishment or abandonment of the homestead."). Plaintiff alleges that the property was an ongoing project for Defendants, but was unlivable at the time of the petition because it did not have electrical service. ECF No. 32 ¶ 54. Therefore, even if the allegations were timely and true, the fact that Defendants did not live at the Snow Camp Property at the time of the petition is merely consistent with potential liability, but does not establish a plausible claim for relief. In any event, Plaintiff could have timely objected to Defendants' exemptions and litigated this issue, but he did not.

## 2.   Section 727(a)(4)(C)

Plaintiff seeks to amend the Complaint to add a claim under § 727(a)(4)(C).  Plaintiff must establish two elements under § 727(a)(4)(C): "(1) knowledge and fraudulent intent on the part of the debtor; and, (2) receipt of, or an attempt to obtain, or the giving or offering of, money, property, or advantage, or a promise of these, for a purpose, namely, action or forbearance in the case in which the offender is a debtor."  In re Stewart, 577 B.R. 581, 585 (Bankr. W.D. Okla. 2017).  "Section 727(a)(4)(C) covers any 'extortion,' even using that word in a broad, general sense, and bribery."  6 Collier on Bankruptcy ("Collier") ¶ 727.06 (16th ed. 2019).

Although the Proposed Amended Complaint indicates that Plaintiff seeks to amend the Complaint to assert a claim under § 727(a)(4)(C), Plaintiff does not make a single allegation of fact that would remotely reflect extortion or bribery by Defendants, and the proposed claim is wholly meritless.[23]  Because

---

[23] Given Plaintiff's kitchen-sink approach to pleading in this case, the Court reminds Plaintiff that he is subject to the requirements of Fed. R. Bankr. P. 9011, which, in relevant part, provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument

Plaintiff's claim under § 727(a)(4)(C) would not survive a motion to dismiss under Rule 12(b)(6), the Motion to Amend will be denied with respect to this claim. Moreover, even if the Proposed Amended Complaint contained allegations of extortion or bribery by Defendants, the Court still would deny the Motion to Amend as futile. The original Complaint does not allege operative facts tending to show that Defendants engaged in extortion or bribery or otherwise "identif[y] the factual circumstances out of which the amended claim arises," and therefore the proposed claim under § 727(a)(4)(C) would not relate back to the filing of the Complaint. DeBerry, 2012 WL 1463598, at *7 (citations omitted).

---

for the extension, modification, or reversal of existing law or the establishment of new law;
(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery [.]

Fed. R. Bankr. P. 9011(b). The Court warns Plaintiff to carefully consider the factual and legal bases in any further papers filed with the Court. The Court will not tolerate further baseless claims or arguments. See e.g., Spears v. El Dorado Cty. Sheriff's Dep't, No. 2:15-CV-0165 AC P, 2019 WL 1043105, at *2 (E.D. Cal. Mar. 5, 2019) ("'Shotgun' or 'kitchen sink' complaints, like the instant [amended complaint], are strongly disfavored."), report and recommendation adopted, No. 215CV0165MCEACP, 2019 WL 2491314 (E.D. Cal. June 14, 2019); Vogel v. Huntington Oaks Del. Partners, LLC, 291 F.R.D. 438, 442 (C.D. Cal. 2013) ("In state court, lawyers routinely file kitchen-sink [pleadings]. Apparently it is condoned. In federal court, greater adherence to the rules is required. This sort of junk-pleading is unacceptable."); Gurman v. Metro Hous. & Redevelopment Auth., 842 F. Supp. 2d 1151, 1154 (D. Minn. 2011) ("[T]he Court will no longer tolerate the filing of kitchen-sink complaints—complaints that almost always violate Rule 8 and often violate Rule 11."). Plaintiffs' "throw it all at the wall and see what sticks" strategy in this case has resulted in the Court having to spend inordinate time parsing through disjointed, baseless, and rambling allegations and theories. Although Plaintiff is acting pro se in this case, he is a licensed attorney, admitted to practice before this Court, and further filings in violation of the rules will not be accorded the leniency given here.

3.   Section 727(a)(4)(D)

Section 727(a)(4)(D) imposes "an affirmative duty on the Debtor to cooperate with the trustee 'by providing all requested documents to the trustee for his review, and failure to do so constitutes grounds for denial of discharge.'" In re Robinson, 595 B.R. 148, 160-1 (Bankr. S.D.N.Y. 2019) (quoting In re Erdheim, 197 B.R. 23, 28 (Bankr. E.D.N.Y. 1996)). To support a claim under this section, a plaintiff must establish that:

> 1) the withholding of documents was done by the debtor or someone for whose conduct the debtor is legally responsible; 2) was in connection with a case; 3) was withheld from an officer of the estate entitled to possession; 4) was done knowingly and fraudulently; and 5) relates to the debtor's property or financial affairs.

In re Belk, 509 B.R. 513, 521 (Bankr. W.D.N.C. 2014) (quoting In re Slocombe, 344 B.R. 529, 534 (Bankr. W.D. Mich. 2006)). "All books and records which are material to an understanding of the debtor's financial condition and transactions are within the scope of section 727(a)(4)(D)." In re Robson, 154 B.R. 536, 540 (Bankr. E.D. Ark. 1993) (citing Wortman v. Ridley, 115 B.R. 731, 737 (Bankr. D. Mass. 1990)). Nevertheless, a debtor has no obligation to turnover documents that the debtor does not possess or that do not exist. Collier ¶ 727.07 (and cases cited therein).

The Complaint alleges that Defendants should be denied a discharge under § 727(a)(4)(D) because "[Defendants] repeatedly refused to cooperate with counsel for the Trustee in producing

41

requested documents in connection with Trustee's counsel's efforts to recover assets for the estate." ECF No. 1 ¶ 34.[24] Plaintiff's claim is based on two emails between Plaintiff, acting as special counsel for the Trustee, and the male Defendant. Id. Plaintiff alleges that the male Defendant, in response to Plaintiff's requests for unspecified documents, stated, "Let me be frank, I do not have ready access to the documents and will not produce them." Id. The Complaint further alleges that Defendants' failure to produce documents hindered Plaintiff's efforts to "convince the other side [that Defendants] were not operating a competing business with Steri-Clean, Inc.," which ultimately resulted in a lower recovery for the estate. Id.

Plaintiff seeks to amend the Complaint to include additional allegations in support of his § 727(a)(4)(D) claim. First, according to Plaintiff, "Plaintiff and the Trustee were blind-sided by [Defendants' Steri-Clean franchise application] at [the]

---

[24] In the underlying case, Plaintiff filed the Supplement Affidavit of Harry G. Gordon in Support of Attorney Fees ("Plaintiff's Supplemental Affidavit in Support of Fee Application") on July 10, 2019. Bk. Dkt. No. 50. Plaintiff's Supplemental Affidavit in Support of Fee Application, in relevant part, provides:

> I filed the Motion to Extend Time primarily as a precautionary matter as the Debtors were refusing to cooperate in limited discovery demands by the defendants in the litigation, and the Trustee and I were both worried that we might need a Court Order for their cooperation in the litigation.

Id. ¶ 3. Neither Plaintiff nor the Trustee made a request to the Court to compel Defendants to produce anything in connection with the Steri-Clean litigation.

[m]ediation, and Defendants did nothing to warn Plaintiff and the Trustee that their own representations/misrepresentations to the franchisor could not be reconciled with their Bankruptcy Petition." ECF No. 32 ¶ 62.b. Nevertheless, Plaintiff does not allege that the Trustee ever requested that Defendants provide the Steri-Clean application or any category of documents that would have included the application. See Robinson, 595 B.R. at 161 (holding that § 727(a)(4)(D) imposes "an affirmative duty on the Debtor to cooperate with the trustee 'by providing all requested documents to the trustee'" (emphasis added)).

Second, the Proposed Amended Complaint alleges that Defendants withheld and "[d]eliberately fail[ed] to provide the 'Residence' Appraisal to the Trustee in [a] timely fashion to enable the Trustee to determine that the $130,000 figure placed in the Petition was based on an appraisal of the lot only and did not include the house." Id. ¶ 66.b. Plaintiff alleges that "[t]he Trustee . . . did not know in time to file a Complaint to Determine Dischargeability of Debt that the Defendants had relied on a 'residence appraisal' that only valued the lot . . . . " Id. ¶ 20.[25]

---

[25] In considering a motion for judgment on the pleadings under Rule 12(c), a court "may consider the complaint, the answer, and any documents incorporated by reference into these pleadings." Crisp v. Allied Interstate Collection Agency, 149 F. Supp. 3d 589, 594 n. 5 (citing Mendenhall v. Hanesbrands, Inc., 856 F. Supp. 2d 717, 724 (M.D.N.C. 2012)). "The court may also consider documents attached to dispositive motions so long as these documents are 'integral to the complaint and authentic.'" Id. (citations omitted). Moreover, a court does not accept allegations as true when those allegations are

43

The allegations in the Complaint regarding Defendants' failure to produce documents in connection with the Steri-Clean litigation similarly fail to state a claim under § 727(a)(4)(D). Among other issues, § 727(a)(4)(D) requires that Defendants "knowingly and fraudulently" withheld "recorded information . . . relating to the debtor's property or financial affairs," yet the Complaint does not contain allegations of fact which plausibly state a claim that Defendants fraudulently withheld any documents. See In re Yoon, No. 10-30558, 2011 WL 1258179, at *3 (Bankr. S.D. Tex. Apr. 1, 2011) (holding that a complaint did not state a claim under § 727(a)(4)(D) when the plaintiffs generally alleged that the defendant concealed business records but did not "allege specific instances in which [the defendant] withheld records from the [t]rustee" and "[did] not allege facts that would give rise to an inference of fraudulent intent in withholding records.").

contradicted by documents appropriately considered about which there is no dispute as to authenticity. GFF Corp., 130 F.3d at 1385 ("[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true."). Plaintiff alleges that the Trustee did not know about the basis of the appraisal until after the February 25, 2019 deadline to object to dischargeability. Again, there is no allegation that the Trustee requested the appraisal. However, it appears that the Trustee not only requested the appraisal, but received it long before February 25, 2019. In their Supplemental Response to the Motion to Amend, Defendants attach a copy of an email from their counsel to the Trustee dated January 3, 2019, attaching a copy of the Appraisal Report. ECF No. 35 at 10. As set forth above, when considering the futility of a motion to amend, a court applies the same standards as considering a motion to dismiss. The Court will dismiss the claim under § 727(a)(4)(D) with respect to the putative failure to disclose the Appraisal Report based solely on the insufficiency of Plaintiff's allegations for the reasons set forth herein and without regard to the email attached to the response. Nevertheless, this is another instance of Plaintiff filing a paper with the court containing factual allegations that appear to lack evidentiary support in violation of Bankruptcy Rule 9011.

Moreover, the Complaint does not identify the requested documents, allege that the documents existed, or allege that, to the extent such documents existed, Defendants (collectively or individually) had possession or control of the documents. Plaintiff seeks to amend the Complaint to include additional allegations regarding Defendants' failure to produce documents in connection with the Steri-Clean litigation, but the Proposed Amended Complaint does not remedy these infirmities.[26]

Likewise, Plaintiff's allegations in the Proposed Amended Complaint regarding Defendants' withholding of the Appraisal

---

[26] Although the Complaint alleges that Defendants failed to produce documents relevant to whether they were operating a competing business, ECF No. 1 ¶ 34, there is no allegation as to the specific documents or categories of documents the Trustee or his special counsel requested to prove this negative, or that, if such documents existed, Defendants fraudulently withheld them. In any event, such information would have been available in documents readily available to the Trustee. Defendants were required to provide their federal tax returns to the Trustee under § 521(e)(2), Defendants' Statement of Financial Affairs (Bk. Dkt. No. 1, Part 2, ¶¶ 4-5), was required to disclose Defendants' income for the previous three years, and Defendants appeared at the meeting of creditors under § 341. The Trustee did not file any motion to dismiss under § 521(e)(2)(B), request further documents from Defendants, or seek further examination of the Defendants. Moreover, the Proposed Amended Complaint omits any allegation that he had requested documents relevant to whether they were operating a competing business. Instead, the Proposed Amended Complaint merely alleges that Plaintiff and the Trustee were "blind-sided" by Steri-Clean franchise application, but does not allege that they had requested the document from Defendants. ECF No. 32 ¶ 62.b. As discussed below, Plaintiff is trying to have it both ways with respect to Defendants' Steri-Clean franchise application albeit without alleging that Defendants provided the application to him before the mediation in the underlying bankruptcy case. In support of his § 727(a)(4)(D) claim, Plaintiff alleges that "Plaintiff and the Trustee were blind-sided by [Defendants' Steri-Clean franchise application] at [the] [m]ediation." Id. However, in support of his § 523(a)(2)(B) claim, Plaintiff relies only on an allegation that the Defendants admit they provided the Steri-Clean application to the Plaintiff at the inception of the relationship, rather than alleging that fact as true. Id. ¶ 60.c. In any event, it is not plausible that Plaintiff could have relied on a document in providing significant legal services, but have so forgotten its existence as to be "blind-sided" by the content of that document after commencement of the bankruptcy case.

Report fail to state a claim under § 727(a)(4)(D).  Among other issues, the Proposed Amended Complaint merely conclusorily alleges that Defendants failed to provide the Appraisal Report to the Trustee to provide sufficient time for the Trustee to object to Defendants' exemptions.  Plaintiff does not allege facts supporting a conclusion that Defendants knowingly and fraudulently withheld the Appraisal Report after the Trustee requested it.  See In re Wilbur, 574 B.R. 782, 798 (Bankr. N.D. Ga. 2017) (dismissing a claim under § 727(a)(4)(D) because the complaint did "not allege that Defendant withheld any information requested by the Trustee or other officer of the estate").

Therefore, neither the Complaint nor the Proposed Amended Complaint state a claim under § 727(a)(4)(D).  Accordingly, the Motion for Judgment on the Pleadings will be granted with respect to Plaintiff's claim under § 727(a)(4)(D), and the Motion to Amend will be denied with respect to Plaintiff's claim under § 727(a)(4)(D).

**D.   Section 523(a)(2)**

Plaintiff asserts that his claim for pre-petition fees should be excepted from discharge under § 523(a)(2)(A) and (B).  ECF No. 32 at 32.  Section 523(a)(2), in relevant part, provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

46

(2) for money, property, services, or an
extension, renewal, or refinancing of credit, to
the extent obtained by--
    (A) false pretenses, a false representation,
    or actual fraud, other than a statement
    respecting the debtor's or an insider's
    financial condition;
    (B) use of a statement in writing--
        (i) that is materially false;
        (ii) respecting the debtor's or an
        insider's financial condition;
        (iii) on which the creditor to whom the
        debtor is liable for such money,
        property, services, or credit
        reasonably relied; and
        (iv) that the debtor caused to be made
        or published with intent to deceive[.]

Although "523(a)(2)(A) and (B) have generally been held to be mutually exclusive," both sections may be applicable when a defendant has engaged in "various forms of fraud during an ongoing relationship." In re Booker, 165 B.R. 164, 168 (Bankr. M.D.N.C. 1994) (citations omitted).

"Rule 9(b) applies to actions to except a debt from discharge under § 523(a)(2)." In re Hartman, No. 18-AP-00054, 2019 WL 5616256, at *3 (Bankr. N.D. W. Va. Sept. 27, 2019) (citing In re Cohn, 54 F.3d 1108, 1120 (3rd Cir. 1995); In re Kullgren, 109 B.R. 949, 954 (Bankr. C.D. Cal. 1990)). Therefore, to satisfy the heightened requirements of Rule 9(b), Plaintiff "must, at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir.

2008) (quoting <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 784 (4th Cir. 1999)).

Exceptions to discharge under § 523 are narrowly construed against the creditor, and any doubts should be resolved in favor of discharge. <u>Rountree</u>, 478 F.3d at 219 ("When considering the applicability of an exception to discharge, we construe the exception narrowly 'to protect the purpose of providing debtors a fresh start.'" (quoting <u>Biondo</u>, 180 F.3d at 130); <u>In re Bodenstein</u>, 168 B.R. 23, 27 (Bankr. E.D.N.Y. 1994) ("[E]xceptions under 11 U.S.C. § 523(a) should be literally and strictly construed against the creditor and liberally in favor of the debtor.")(compiling cases).

### 1.   Section 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  It is well settled that oral statements respecting a debtor's financial condition "are . . . outside the scope of 11 U.S.C. § 523(a)(2) and can not [sic] be the basis for preventing discharge of the bankrupt." <u>Blackwell v. Dabney</u>, 702 F.2d 490, 492 (4th Cir. 1983) (citations omitted); <u>In re Owens</u>, 549 B.R. 337, 349 (Bankr. D. Md. 2016) ("Statements respecting a debtor's

48

financial    condition    are    not    actionable    under    Section
523(a)(2)(A)[.]"). Plaintiff must establish five elements to
sustain a claim under § 523(a)(2)(A):

> (1) That the debtor made a representation; (2) That at
> the time the representation was made, the debtor knew
> the representation was false; (3) That the debtor made
> the false representation with the intention of deceiving
> the creditor; (4) That the creditor relied on such
> representation; and (5) That the creditor sustained the
> alleged loss and damage as the proximate result of the
> false representation.

In re Simos, 209 B.R. 188, 191 (Bankr. M.D.N.C. 1997). "If one or
more of these elements are not established, a plaintiff's claim
for nondischargeability will fail." In re Marroquin, 441 B.R.
586, 593 (Bankr. N.D. Ohio 2010).

Plaintiff alleges that Defendants made misrepresentations to
Plaintiff and other creditors "to induce [P]laintiff and others to
provide valuable services, goods, or money on credit." ECF No. 1
¶ 10.   First, Plaintiff alleges that Defendants misrepresented
their  assets  and  liabilities  in  their  Steri-Clean  franchise
application,  though  Plaintiff  does  not  allege  that  these
representations were made to him, that Defendants intended for him
to  rely  on  the  Steri-Clean  franchise  application,  or  that  he
actually  relied  on  the  figures  in  the  Steri-Clean  franchise
application in any way, and Plaintiff does not cure this defect in
the  proposed  amendment.    Id.  ¶¶  20-22;  ECF  No.  32  ¶  60.c.[27]

---

[27] Paragraph 60.c. of the Proposed Amended Complaint recounts that Defendants
contend in their Answer that they provided the Steri-Clean application to

Second, Plaintiff alleges that Defendants misrepresented their assets, income, and intended use of borrowed funds in certain credit card applications. ECF No. 1 ¶ 25. This allegation suffers the same infirmities.[28]

Finally, Plaintiff alleges that Defendants "made misrepresentations of fact to induce [P]laintiff to take their case and to continue working on their case." Id. ¶ 27. Specifically, Plaintiff alleges that Defendants told Plaintiff that they intended to pay Plaintiff for legal services, that they would provide "handyman" services to Plaintiff to cover Plaintiff's fees, that they no longer owned their home, and that they did not intend to file for bankruptcy. Id. ¶ 27.g–h. According to Plaintiff, "[Defendants] never intended to pay agreed per-hour charges to Plaintiff." Id. ¶ 27.g.v. Plaintiff's allegation regarding Defendants' alleged intent is based on the following:

> a) Debtors made monetary payments of only the initial $750 retainer paid on the first day, June 1, 2017, never making another money payment during the entire 18-month period of representation; b) Debtors did repair work for only the first three (3) months, with one exception, and never found time for many months to do any work or had other excuses for the remaining months of the 18-month period; and c) Debtors quickly switched from a barter

Plaintiff, but Plaintiff does not adopt this fact as an allegation, nor does he allege that he actually relied on the application. In contrast, he alleges that he was "blind-sided" by its content at the mediation. ECF No. 32 ¶ 62.b.

[28] These alleged misrepresentations, even if properly pleaded, do not state a claim under § 523(a)(2)(A) because they are statements regarding Defendants' financial condition. See infra Section IV.D.1.a.

arrangement to a 50% cash/50% credit arrangement, and then billed excessive amounts for repairs . . . . Debtors also declined to sign a promissory note and deed of trust, misrepresenting that the bank had taken title to their Home.

Id.

The Proposed Amended Complaint largely repeats the allegations from the Complaint and alleges that the debt owed by Defendants to Plaintiff "was obtained by false pretenses, false representations, and actual fraud." ECF No. 32 ¶ 81. According to Plaintiff, Defendants "employed false representations and actual fraud to induce [P]laintiff to provide valuable legal services when [D]efendants had no intent to pay for the same and for a period of months after [D]efendants had made a decision to file [for] bankruptcy." Id. Specifically, Plaintiff alleges that Defendants misrepresented their intention to pay Plaintiff's fees and their intention not to file for bankruptcy protection. Id.

### a.    Alleged Misrepresentations Regarding Defendants' Assets and Liabilities

The allegations in the Complaint and Proposed Amended Complaint relating to Defendants' alleged misrepresentations regarding their assets and liabilities fail to state a claim under § 523(a)(2)(A). Any alleged misrepresentations by Defendants regarding their assets and liabilities in their Steri-Clean franchise application and credit card applications are statements respecting Defendants' financial condition, which are not

51

actionable under § 523(a)(2)(A).    See Owens, 549 B.R. at 349
("Statements respecting a debtor's financial condition are not
actionable under Section 523(a)(2)(A)[.]").    Likewise, any alleged
oral misrepresentations by Defendants regarding the status of the
ownership of their home or the equity in it constitute statements
respecting Defendants' financial condition, which are not
actionable under § 523(a)(2)(A).    See Lamar, Archer & Cofrin, LLP
v. Appling, 138 S. Ct. 1752, 1761, 201 L. Ed. 2d 102 (2018) (holding
that "a statement is 'respecting' a debtor's financial condition
if it has a direct relation to or impact on the debtor's overall
financial status" and holding that "a statement about a single
asset can be a 'statement respecting the debtor's financial
condition'" because "a statement about a single asset bears on a
debtor's overall financial condition and can help indicate whether
a debtor is solvent or insolvent, able to repay a given debt or
not.").

    Therefore, neither the Complaint nor the Proposed Amended
Complaint state a claim under § 523(a)(2)(A) with respect to the
alleged misrepresentations by Defendants regarding their assets
and liabilities.    Accordingly, the Motion for Judgment on the
Pleadings will be granted and the Motion to Amend will be denied
with respect to Plaintiff's claim under § 523(a)(2)(A) to the
extent such claim is based on the alleged misrepresentations by
Defendants regarding their assets and liabilities.

### b.   Defendants' Alleged Misrepresentations Regarding the Payment of Plaintiff's Fees

Although the Complaint asserts that "[Defendants] never intended to pay agreed per-hour charges to Plaintiff," ECF No. 1 ¶ 27.g.v., the Complaint fails to allege sufficient facts to support a plausible inference that Defendants did not intend to pay Plaintiff's fees.   Plaintiff essentially alleges that Defendants' never intended to pay Plaintiff's fees because they did not pay his fees in cash and they did provide sufficient "handyman" services to Plaintiff to cover Plaintiff's fees.   These allegations are insufficient to support a claim under § 523(a)(2)(A).   See In re Fatone, No. 13-00081-8-RDD, 2013 WL 5798999, at *2 (Bankr. E.D.N.C. Oct. 25, 2013) ("[A] mere promissory representation will not be sufficient to support an action for fraud [unless] ... it is made with intent to deceive the promisee, and the promisor, at the time of making it, has no intent to comply." (quoting Johnson v. Phoenix Mut. Life Ins. Co., 300 N.C. 247, 255, 266 S.E.2d 610, 616 (N.C.1980))); In re Thomas, No. 10-80835C-7D, 2011 WL 65882, at *2 (Bankr. M.D.N.C. Jan. 10, 2011) ("[A]n allegation that a party did not intend to perform a contract at the time the contract was entered will not support a claim for relief based upon alleged fraud."); Marroquin, 441 B.R. at 593 ("For purposes of § 523(a)(2)(A), the mere breach of a promise to pay does not establish the existence of an intent to

defraud.    Otherwise, any breach of contract would be a nondischargeable debt." (citing Giansante & Cobb, LLC v. Singh (In re Singh), 433 B.R. 139, 163 (Bankr. E.D. Pa. 2010))).

Plaintiff seeks to amend the Complaint to include additional allegations in support of his assertion that Defendants never intended to pay his legal fees.   The Proposed Amended Complaint alleges that Defendants were "consulting with bankruptcy counsel and purchasing the pre-bankruptcy appraisal [of the Snow Camp Property]" in August 2018 when they declined to sign a promissory note and deed of trust securing Plaintiff's outstanding legal fees. ECF No. 32 ¶ 60.m.  According to Plaintiff, these facts demonstrate that Defendants never intended to pay Plaintiff's legal fees.  Id. ¶ 60.l–m.  Although the allegation that Defendants were taking steps toward filing for bankruptcy when they declined to sign a promissory note and deed of trust in August 2018 does not establish that Defendants never intended to pay Plaintiff's legal fees from the outset, the allegation is sufficient to support a plausible inference that Defendants did not intend to pay for services rendered after August 24, 2018.

Therefore, the Motion to Amend will be denied and the Motion for Judgment on the Pleadings will be granted with respect to Plaintiff's claim under § 523(a)(2)(A) to the extent such claim relies on Defendants' alleged misrepresentations regarding their intention to pay Plaintiff's fees and relates to services rendered

54

prior to August 24, 2018.  The Motion to Amend will be granted and the Motion for Judgment on the Pleadings will be denied with respect to Plaintiff's claim under § 523(a)(2)(A) to the extent such claim relies on Defendants' alleged misrepresentations regarding their intention to pay Plaintiff's fees and relates to services rendered after August 24, 2018.

### c. Defendants' Alleged Promises Not to File for Bankruptcy

The Complaint fails to state a claim under § 523(a)(2)(A) with respect to Plaintiff's allegations regarding Defendants' promises not to file for bankruptcy.  Plaintiff alleges that Defendants "represented to Plaintiff and assured Plaintiff that they would never file [for] bankruptcy" on multiple occasions. ECF No. 1 ¶ 27.h.  Although the Complaint vaguely identifies three occasions "during Plaintiff's representations [sic] of Debtors" when Defendants promised not to file for bankruptcy, id. ¶ 27.h.i-iii, the allegations in the Complaint do not satisfy the particularity requirements of Rule 9(b).  See Wilson, 525 F.3d at 379 (stating that the particularity requirements under Rule 9(b) are often "referred to as the who, what, when, where, and how of the alleged fraud" (emphasis added) (internal quotations omitted)).  Although the Proposed Amended Complaint remedies many of the Complaint's particularity infirmities, it still fails to allege sufficient facts to support a plausible inference that

Plaintiff actually relied on Defendants' alleged promises not to
file for bankruptcy prior to August 22, 2018.

Plaintiff's allegations must be considered in context. See
Iqbal, 556 U.S. at 679 ("Determining whether a complaint states a
plausible claim for relief will . . . be a context-specific task
that requires the reviewing court to draw on its judicial
experience and common sense."). Plaintiff was acutely aware of
Defendants' dire financial condition, the possibility that
Defendants might have to file bankruptcy, and that the male
Defendant had done so in the past. ECF No. 32 ¶¶ 31–32. In fact,
Plaintiff suggested that Plaintiffs consider filing for bankruptcy
in his initial meeting with them. ECF No. 1 ¶ 27.h.i. Plaintiff
alleges that he learned of Defendants' substantial credit card
debt "[d]uring the initial meeting between Plaintiff and
Defendants." ECF No. 32 ¶ 31. Plaintiff acknowledges that he
"expressed concern and promptly asked if he was being asked to
recover monies for the [Defendants] or for the credit card
companies, as [Defendants] could file bankruptcy to avoid credit
card debt." Id. Although Defendants allegedly informed Plaintiff
that they intended to pay their credit card debt, "[Plaintiff] was
very concerned that the reality would be that the credit card
companies, not the [Defendants], would be the beneficiaries of his
legal work, increasing the likelihood the [Defendants] would not
pay for legal services." Id. ¶ 32. Plaintiff alleges that

Defendants then "assured [Plaintiff] that they paid their debts, they had a strong moral and religion-based obligation to do so, they wanted to make sure the credit card companies were paid, [the male Defendant] had been in bankruptcy before, and they would never file bankruptcy again." Id.

Despite these statements, in an email to Defendants on August 22, 2018, Plaintiff, in relevant part, stated to the male Defendant:

> I suggest we come up with some way to secure my firm's fees in case you do have to file [for] bankruptcy or just run out of money and steam . . . . In a number of cases, clients have signed Promissory Notes agreeing to pay legal fees. In cases where the clients are possible candidates for bankruptcy relief, they place a lien on their real estate or other property of value to protect the attorney if indeed the worst happens. . . . We have discussed the fact that you are indeed a candidate for bankruptcy . . . . But, I cannot continue to expend time and effort unless we do something to assure my firm it will be paid. You have repeated [sic] assured me I would be paid, and if so, this will not matter and may provide protections from other creditors.

Id. ¶ 60.f. These allegations demonstrate that Plaintiff was aware of the possibility of bankruptcy from the inception of the attorney-client relationship, and as late as August 22, 2018, Plaintiff not only still knew Defendants might file bankruptcy again, but also Plaintiff had not in fact relied on any representation that they would not. Plaintiff's failure to actually rely on Defendants' representations that they would not

file bankruptcy prior to August 22, 2018, is fatal to his claim under § 523(a)(2)(A) to the extent such claim relates to fees for services rendered prior to August 22, 2018.  See In re Hill, 425 B.R. 766, 777 (Bankr. W.D.N.C. 2010) ("To satisfy the justifiable reliance requirement, the creditor must [first] prove it actually relied upon the debtor's misrepresentations.").

Although Plaintiff will face a difficult if not insurmountable evidentiary burden in demonstrating that he justifiably relied on Defendants' alleged promises not to file for bankruptcy under the facts of this case, see In re Sasse, 438 B.R. 631 (Bankr. W.D. Wis. 2010), Plaintiff has alleged sufficient facts to survive a motion to dismiss with respect to his claim under § 523(a)(2)(A) to the extent such claim relies on Defendants' alleged promises not to file for bankruptcy and relates to services rendered after August 22, 2018.

Therefore, the Motion to Amend will be denied and the Motion for Judgment on the Pleadings will be granted with respect to Plaintiff's claim under § 523(a)(2)(A) to the extent such claim relies on Defendants' alleged promises not to file for bankruptcy and relates to services rendered prior August 22, 2018.  The Motion to Amend will be granted and the Motion for Judgment on the Pleadings will be denied with respect to Plaintiff's claim under § 523(a)(2)(A) to the extent such claim relies on Defendants'

58

alleged promises not to file for bankruptcy and relates to services rendered after August 22, 2018.

### 2.    Section 523(a)(2)(B)

Under Section 523(a)(2)(B), a debt for money, property, or the extension of credit is non-dischargeable to the extent it was obtained by: "(1) a written statement; (2) the written statement was materially false; (3) the written statement concerns the debtor's financial condition; (4) the plaintiff reasonably relied on the statement; and (5) the debtor published the writing with the intent to deceive the plaintiff."  In re Anzo, 547 B.R. 454, 465 (Bankr. N.D. Ga. 2016) (citing Bank of N. Ga. V. McDowell (In re McDowell), 497 B.R. 363, 369 (Bankr. N.D. Ga. 2013)).

The original Complaint does not specifically assert a claim under § 523(a)(2)(B); however, Plaintiff alleges that Defendants made a false statement in writing "to induce [P]laintiff to take their case and to continue working on their case."  ECF No. 1 ¶¶ 26–27.  As discussed above, by August 9, 2018, Defendants had incurred legal fees in excess of $80,000 in connection with the state court litigation against Steri-Clean.  Id. ¶ 27.b.  Plaintiff alleges that he sent Defendants an email on August 22, 2018, which inter alia, reiterated Plaintiff's belief that Defendants were "candidate[s] for bankruptcy" and suggested that Defendants execute a promissory note in favor of Plaintiff secured by a deed of trust on unspecified property of Defendants.  Id. ¶ 27.c.

According to Plaintiff's account of the email, Plaintiff requested
a promissory note and deed of trust so that "the debt to
[Plaintiff's] firm would be secured debt and get ahead of credit
card companies and other unsecured debt." Id. Plaintiff alleges
that the male Defendant responded by orally stating that the bank
owned Defendants' home, which Plaintiff construed as a
representation that "either there was no equity in their home or
the bank had indeed foreclosed on the home." Id. ¶ 27.d.  In
addition, Plaintiff alleges that the male Defendant, acting on
behalf of Defendants, sent Plaintiff an email on August 24, 2018,
stating, "So here we are, as far as signing some deed to our home,
that is no longer ours." Id. Plaintiff contends that he
"reasonably relied upon [Defendants'] untrue statements in moving
forward without security and providing substantial additional
legal services for [Defendants]." Id. ¶ 27.e.

Although the Proposed Amended Complaint largely repeats the
allegations in the Complaint, Plaintiff seeks to amend the
Complaint to specifically assert a claim under § 523(a)(2)(B).
Plaintiff's § 523(a)(2)(B) claim in the Proposed Amended Complaint
is based on two allegedly false statements made by Defendants in
writing, and these allegations are sufficiently grounded in the
previously alleged operative facts to relate back to the original
filing.  First, Plaintiff alleges that Defendants "admit" that
they provided Plaintiff with a copy of Defendants' Steri-Clean

60

franchise application "early on in their dealings," which included "a false written statement of their assets and liabilities." ECF No. 32 ¶ 60.c.[29]  Second, Plaintiff alleges that Defendants, in response to a request from Plaintiff that Defendants execute a promissory note for Plaintiff's legal fees along with a deed of trust secured by Defendants' home, sent Plaintiff an email stating that they no longer owned their home and therefore could not execute a promissory note secured by it.  Id. ¶ 60.g.  Plaintiff understood these statements to mean that Defendants either no longer owned the home or had no equity in it.  Id.  Plaintiff alleges that he "reasonably relied upon those untrue statements not [sic] insisting on a signed Promissory Note and Deed of Trust and in moving forward without security and providing substantial additional legal services for Defendants."  Id. ¶ 60.h.

In support of his § 523(a)(2)(B) claim, Plaintiff alleges that he relied on the allegedly false representations in the Steri-Clean franchise application in deciding to provide Defendants with legal services.  Id. ¶ 60.c.  The alleged underlying facts,

---

[29] Plaintiff again plays fast and loose with his allegations here, referring to what Defendants have admitted, rather than overtly alleging facts that would directly contradict his prior allegations that he and the Trustee were "blind-sided" by the Steri-Clean application at the mediation in this bankruptcy case. ECF No. 32 at ¶ 62.b.; see also ECF No. 1 ¶ 27.j. (asserting that Plaintiff would not have asserted a claim for fraudulent inducement in the Steri-Clean litigation had he known the contents of the Steri-Clean application "at the outset").  Regardless of the timing, he does not allege that Defendants intended for him to rely on the Steri-Clean franchise application or facts that would plausibly support the conclusory statements that he actually relied on it.

however, do not support a reasonably plausible assertion of that conclusory statement. Plaintiff alleges that "Plaintiff and the Trustee were blind-sided by [Defendants' Steri-Clean franchise application] at [the] [m]ediation." ECF No. 32 ¶ 62.b.   Because the factual allegations in the Proposed Amended Complaint contradict any conclusory and elemental statement that Plaintiff relied on the Steri-Clean application, the Court need not accept that conclusion true. Campos v. I.N.S., 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998) ("Courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductible therefrom, but need not accept factual claims that are internally inconsistent, facts which run counter to facts of which the court can take judicial notice, conclusory allegations, unwarranted deductions, or mere legal conclusions asserted by a party."). Therefore, Plaintiff has failed to state a claim under § 523(a)(2)(B) with respect to the Steri-Clean franchise application because Plaintiff has failed to allege facts plausibly establishing that he actually relied on the Steri-Clean franchise application in deciding to provide Defendants with legal services.

As a second basis for Plaintiff's attempt to assert a claim under § 523(a)(2)(B), Plaintiff alleges that he received the email from Defendants stating that they no longer owned their home on August 24, 2018. ECF No. 32 ¶ 60.g. The Complaint and the Proposed Amended Complaint allege sufficient facts to survive a motion to

dismiss as to a portion of the debt owed by Defendants to Plaintiff on this basis. Plaintiff alleges that Defendants had incurred legal fees in excess of $80,000 by August 9, 2018, id. ¶ 60.e., which represents the vast majority of the total fees incurred in representing the Defendants.[30] To the extent Plaintiff relies on the email to allege that the fees for services rendered prior to August 24, 2018, are non-dischargeable under § 523(a)(2)(B), Plaintiff has failed to state a claim under § 523(a)(2)(B) because he could not have relied on Defendants' statement in the email prior to receiving it on August 24, 2018. However, Plaintiff has alleged sufficient facts to survive a motion to dismiss with respect to the fees for legal services rendered after August 24, 2018.

Therefore, the Motion to Amend will be denied and the Motion for Judgment on the Pleadings will be granted with respect to Plaintiff's claim under § 523(a)(2)(B) to the extent Plaintiff relies on the Steri-Clean franchise application. The Motion to Amend will be granted and the Motion for Judgment on the Pleadings will be denied with respect to Plaintiff's claim under § 523(a)(2)(B) to the extent Plaintiff relies on the email from August 24, 2018, to assert that the portion of any debt owed by

---

[30] Plaintiff prays for judgment in the amount of $90,910.31. ECF No. 32 at 32. Plaintiff has filed a proof of claim in the underlying bankruptcy case in the amount of $96,880.11. Claim No. 5-1.

Defendants to Plaintiff for legal services rendered after August 24, 2018, is nondischargeable.

For the reasons set forth herein, it is hereby **ORDERED, ADJUDGED, and DECREED** as follows:

1.   The Motion to Amend is denied as to Plaintiff's untimely objection to Defendants' claimed property exemptions.

2.   The Motion to Amend is denied to the extent that it seeks to deny Defendants' discharge on general equitable grounds not enumerated in § 727.

3.   The Motion to Amend is denied to the extent it seeks an order from the Court requiring the Trustee to undertake duties imposed on him by chapter 7 of title 11.

4.   The Motion to Amend is denied to the extent that it seeks an order from the Court requiring any non-party to this adversary proceeding to conduct an audit of Defendants' assets and liabilities.

5.   The Motion to Amend is denied to the extent that it requests declaratory relief that the Defendants are not honest but unfortunate debtors.

6.   The Motion to Amend is denied as to Plaintiff's claims under § 727(a)(2)(A) and (B).

7.   The Motion to Amend is denied and the Motion for Judgment on the Pleadings is granted as to Plaintiff's claim under

§ 727(a)(4)(A), subject to the Plaintiff filing a further timely motion to amend as provided below.

8.   The Motion to Amend is denied as to Plaintiff's claim under § 727(a)(4)(C).

9.   The Motion to Amend is denied and the Motion for Judgment on the Pleadings is granted as to Plaintiff's claim under § 727(a)(4)(D), subject to the Plaintiff filing a further timely motion to amend as provided below.

10.   The Motion to Amend is denied and the Motion for Judgment on the Pleadings is granted as to Plaintiff's claim under § 523(a)(2)(A) to the extent such claim is based on the alleged misrepresentations by Defendants regarding their assets and liabilities, subject to the Plaintiff filing a further timely motion to amend as provided below.

11.   The Motion to Amend is denied and the Motion for Judgment on the Pleadings is granted as to Plaintiff's claim under § 523(a)(2)(A) to the extent such claim relies on Defendants' alleged misrepresentations regarding their intention to pay Plaintiff's fees and relates to services rendered prior to August 24, 2018, subject to the Plaintiff filing a further timely motion to amend as provided below.

12.   The Motion to Amend is granted and the Motion for Judgment on the Pleadings is denied as to Plaintiff's claim under § 523(a)(2)(A) to the extent such claim relies on Defendants'

65

alleged misrepresentations regarding their intention to pay Plaintiff's fees and relates to services rendered after August 24, 2018.

13. The Motion to Amend is denied and the Motion for Judgment on the Pleadings is granted as to Plaintiff's claim under § 523(a)(2)(A) to the extent such claim relies on Defendants' alleged promises not to file for bankruptcy and relates to services rendered prior August 22, 2018, subject to the Plaintiff filing a further timely motion to amend as provided below.

14. The Motion to Amend is granted and the Motion for Judgment on the Pleadings is denied as to Plaintiff's claim under § 523(a)(2)(A) to the extent such claim relies on Defendants' alleged promises not to file for bankruptcy and relates to services rendered after August 22, 2018.

15. The Motion to Amend is denied as to Plaintiff's claim under § 523(a)(2)(B) to the extent such claim relies on Defendants' alleged misrepresentations in the Steri-Clean franchise application.

16. The Motion to Amend is granted as to Plaintiff's claim under § 523(a)(2)(B) to the extent Plaintiff relies on the August 24, 2018 email from Defendants to assert that the portion of any debt owed by Defendants to Plaintiff for legal services rendered after August 24, 2018, is nondischargeable.

17.   The granting of the Motion for Judgment on the Pleadings to the extent set forth herein is without prejudice to Plaintiff filing a further motion to amend the Complaint in those instances and to the extent set forth above.  Plaintiff shall have 21 days from the entry of this Order to file a further motion to amend, which motion shall attach a complete and consolidated proposed amended complaint, and which proposed amended complaint shall be consistent with this Order.  Plaintiff is cautioned that any proposed amended complaint shall comply with title 28, including 28 U.S.C. § 1927, the North Carolina Rules of Professional Conduct, and the Federal Rules of Bankruptcy Procedure, including without limitation Rules 7008 and 9011.[31]

18.   If Plaintiff timely files a further motion to amend, Defendants shall have 14 days from the filing of the motion to respond thereto.  The Court will rule on the motion on the papers without further hearing unless otherwise directed by the Court.[32]

19.   If Plaintiff does not file a further motion to amend, Plaintiff shall file a consolidated, amended complaint consistent with this Order.  Plaintiff is cautioned that any amended complaint shall comply with title 28, including 28 U.S.C. § 1927, the North Carolina Rules of Professional Conduct, and the Federal Rules of

---

[31] See _supra_ note 23.

[32] See _Local Rule 7007-1(d)_.

Bankruptcy Procedure, including without limitation Rules 7008 and 9011.

20. Plaintiff has propounded extensive and burdensome discovery that, especially in light of the rulings herein, is not proportional to the needs of the case, considering the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery compared to its likely benefit. <u>See</u> Fed. R. Bankr. P. 7026 and Fed. R. Civ. P. 26(b). Therefore, discovery shall remain stayed pending further order of the Court after the pleadings in this case have been determined, at which time the Court will consider Plaintiff's pending motions to compel, ECF Nos. 37 and 39.[33] Provided, however, that nothing herein shall be construed to excuse Defendants for any failure prior to entry of the Court's order staying discovery to properly respond to discovery requests or to appear for a properly noticed deposition without first seeking a protective order from this Court.[34]

[END OF DOCUMENT]

---

[33] <u>See</u> ECF No. 40.

[34] <u>See</u> 6 Moore's Federal Practice – Civil § 26.102[1] ("The obligation to timely move for a protective order applies to written discovery as well as oral depositions. A party may not simply note its objection to a request for written discovery and wait for the requesting party to move to compel discovery. The Party seeking protection is responsible for initiating the process in a timely manner."); <u>see also</u> <u>Brittain v. Stroh Brewery Co.</u>, 136 F.R.D. 408, 413-415 (M.D.N.C. 1991).

**PARTIES TO BE SERVED**

Harry Glen Gordon
Gordon Law Offices
330 S. Greene Street, Ste. 300
Greensboro, NC 27401

Benjamin D. Busch
600 Green Valley Road, Ste. 210
Greensboro, NC 27408

Gerald S. Schafer
Chapter 7 trustee
220 Commerce Place
Greensboro, NC 27401

William P. Miller
Bankruptcy Administrator
101 S. Edgeworth Street
Greensboro, NC 27401

Rodney Wayne Etheridge
Sandra Lynn Etheridge
876 Clark Rd.
Snow Camp, NC 27349